UNITED STATES of America,
Plaintiff-Appellee,

v.

Lee CROPPER, Defendant-Appellant.

No. 71-2703.

United States Court of Appeals,
Fifth Circuit.

Sept. 16, 1971.

Rehearing Denied Nov. 12, 1971.

J. Mack Ausburn, San Antonio, Tex., Robert Eugene Smith, Towson, Md., for defendant-appellant.

John W. Stokes, Jr., U. S. Atty., Atlanta, Ga., Charles A. Pannell, Jr., Asst. U. S. Atty., J. Robert Sparks, Trial Atty., Organized Crim. Strike Force, Atlanta Field Office, for plaintiff-appellee.

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

This appeal from a contempt citation challenges the constitutionality of the recently revised federal immunity statute 18 U.S.C. § 6001 et seq., passed as part of the Organized Crime Control Act of 1970. Appellant Lee Cropper, a Texas resident, was subpoenaed by the United States to appeal before a federal Grand Jury in Atlanta, Georgia in connection with an investigation of possible criminal income tax violations on the part of Michael Thevis and his wife, Joan Thevis. Cropper appeared before the grand jury and after having been sworn, stated his name and residence, but refused to answer further questions invoking the Fifth Amendment privilege against self-incrimination.

Shortly thereafter, the United States Attorney, along with Cropper and his counsel, appeared before the district judge. By letter from the Assistant Attorney General of the United States, the government requested a grant of immunity under 18 U.S.C. § 6001. After a hearing, the district judge granted im-

munity to Cropper and ordered that he return to the Grand Jury and testify. Upon his return to the Grand Jury, Cropper once again refused to testify and invoked his privilege against self-incrimination whereupon the district judge sentenced him to confinement for the duration of the term of the Grand Jury.

Cropper argues on appeal that the Fifth Amendment precludes the federal government from requiring him to testify before a federal Grand Jury under an immunity statute which bars only the use of the compelled testimony (or its fruits) against him but does not bar his future prosecution regarding transactions about which he may testify. Cropper contends that he cannot be required to testify unless the statutory grant of immunity is coextensive with the privilege against self-incrimination. He argues that a statute granting mere "use" immunity is constitutionally deficient and that only a grant of "transactional" immunity would accord him his full Fifth Amendment rights.[1]

■ The statute involved in this case concededly grants only use immunity. Title 18 U.S.C. § 6001 et seq. provides that a witness who invokes his Fifth Amendment privilege may not refuse to testify on that basis if the person presiding over the proceeding communicates to the witness an order granting him immunity in accordance with the statute. The immunity provided by the statute is as follows:

\* \* \* no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.[2]

By the terms of the statute, the government is barred only from using the witness' testimony or the fruits of that testimony against him in a future criminal prosecution. If independent evidence of guilt is adduced, the witness can be convicted of a crime about which he testified under the grant of immunity. In our view the failure of this statute to grant "absolute immunity against future prosecution for the offense to which the question relates" makes it a constitutionally impermissible basis for compelling a witness to testify over a claim of privilege under the Fifth Amendment. Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892).

Four recent federal cases have considered the validity of immunity statutes which grant only use immunity. The Seventh Circuit,[3] the Third Circuit,[4] and the District Court for the Southern District of New York[5] have all recently held that use immunity statutes are an inadequate basis for compelling a witness to testify over a claim of privilege. In contrast, the Ninth Circuit has upheld the statute here in question.[6] The validity of such immunity statutes is also currently pending before the Su-

---

1. The phrase "use immunity" is shorthand used to describe a statute under which the grant of immunity to the witness guarantees only that his testimony (or other information derived from that testimony) will not be *used* against him in any future criminal prosecution. Use immunity statutes do not, however, prohibit future criminal prosecutions. If independent evidence of guilt is found by the government, the witness can be tried and convicted of the crime about which he was questioned under the grant of immunity. Transactional immunity statutes, on the other hand, grant an absolute immunity from any future prosecution for crimes arising from any transaction about which the witness is questioned and testifies.

2. 18 U.S.C. § 6002.

3. In re Korman, 7 Cir., 1971, 449 F.2d 32.

4. United States ex rel. Catena v. Elias, 3 Cir., 1971, 449 F.2d 40.

5. In re Kinoy, D.C., 326 F.Supp. 407 (1971).

6. Stewart v. United States, 9 Cir., 1971, 440 F.2d 954.

preme Court and is likely to be authoritatively adjudicated this term.[7]

This Court is precluded by time from exhaustively discussing the issues presented by this appeal.[8] The erudite opinions of the Seventh and Third Circuits and of the District Court for the Southern District of New York fully state our own views. After a review of the authorities, we can only conclude that Counselman v. Hitchcock, *supra,* is still the binding, authoritative standard by which the adequacy of immunity statutes must be measured. We find nothing in Murphy v. Waterfront Commission of New York Harbor, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964), which erodes the vitality of *Counselman* on the precise issue here in question of the constitutional restrictions upon the interrogating jurisdiction when seeking to compel testimony under a grant of immunity.

The statute in question grants the Appellant a diluted immunity which is far less than that mandated by the Constitution. Accordingly, it is an inadequate basis for compelling him to testify. The order of the district court holding Appellant Lee Cropper in contempt of court is reversed.

Reversed.

### ON PETITION FOR RE-HEARING

**PER CURIAM:**

The Government advances two grounds in support of its petition for rehearing. Finding no merit in either contention, we deny the petition.

The Government's first ground is an asserted conflict between the original panel decision in this case and the opinion of another panel of this court in Widmer v. Stokes, No. 71–2808, decided one day later. *Widmer* involves an action for a declaratory judgment challenging the constitutional validity of 18 U.S.C. §§ 6001, et seq. the same statute that was attacked in this case. In the district court, Widmer sought a stay of any prosecution against him pending adjudication of his constitutional claim on the merits. The district court granted a temporary restraining order on August 30, 1971, but later dismissed the complaint for failure to state a claim. Widmer appealed, and the district court issued an injunction against prosecution of Widmer pending appeal. On September 17, 1971, a panel of this court granted the Government's motion to vacate the injunction against prosecution pending appeal. The panel's reason for granting the motion was as follows:

> Representations have been made to the court by counsel for Appellant that should the stay pending appeal be vacated the Government has stated that it will immediately cause the arrest of the appellant and oppose his release on bond; that this Court should protect Appellant's rights in this regard. We cannot act upon prognostications nor can we preempt the jurisdiction of the District Court to make determinations in the first instance concerning bail.

The Government asserts that the panel action in vacating the injunction is in conflict with our decision in this case since it opened the way for a government prosecution of Widmer for his refusal to testify after being offered a grant of immunity under 18 U.S.C. § 6002. It is apparent, however, from the language quoted from the panel's order, that the panel never reached or decided the underlying constitutional question and thus

---

7. Zicarelli v. New Jersey State Commission of Investigation, 401 U.S. 933, 91 S.Ct. 916, 28 L.Ed.2d 213 (1971) (probable jurisdiction noted). See also, Piccirillo v. New York, 400 U.S. 548, 91 S.Ct. 520, 27 L.Ed.2d 596 (1971).

8. This appeal is taken pursuant to 28 U.S.C. § 1826(b) which requires that appeals from certain contempt citations be decided within 30 days after the notice of appeal is filed. Consequently, this Court has been called upon to decide this appeal within a few days after receipt of the briefs.

that *Widmer* represents no conflict with our decision in this case.

Appellee's second contention is that this court misapprehended the holding of the Supreme Court in *Murphy v. Waterfront Commission of New York Harbor*, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). Appellee argues that *Murphy* gives constitutional sanction to a "use" immunity statute. Although we considered and rejected this argument in our earlier opinion, we take this opportunity to further elaborate our views on the scope of the *Murphy* decision.

To understand *Murphy*, it is important to understand what it decided and what it did not decide. The *Murphy* case cannot be read as a carte blanche sanction of "use" immunity statutes as a constitutionally permissible means of compelling testimony over a claim of privilege because it decided a different, albeit related question. The instant case concerns the constitutional restrictions upon the power of a single jurisdiction to compel an individual to give testimony which may incriminate him under the laws of that jurisdiction. *Murphy*, on the other hand, addressed the problem of immunity statutes in a multiple jurisdictional context. More precisely, *Murphy* defined the limitations imposed by the Constitution on a second jurisdiction where immunity has been granted and testimony compelled by a different jurisdiction.

The appellant in *Murphy* was a recalcitrant witness who had refused to testify in a New Jersey state investigation despite a grant of full transactional immunity from future state prosecutions. However, he argued that the New Jersey immunity statute was constitutionally insufficient in that the statute did not protect him from a federal prosecution or other incriminating use of his testimony by federal authorities.[1] The

Court held that once New Jersey had granted immunity, the United States was barred from using the compelled testimony or its fruits against the witness in a federal prosecution. The Court added, however, that the United States could still prosecute the witness for a federal crime related to the transaction about which he had testified if that prosecution was based upon independently obtained evidence of guilt.

■ The Government now argues that from the *Murphy* holding that the second jurisdiction must, at minimum, refrain from using compelled testimony and its fruits against the witness, flows the conclusion that the same standard is applicable to the first jurisdiction. But such a conclusion does not follow. There are substantial policy reasons why the immunity granted by the second jurisdiction need not be as broad as that granted by the interrogating jurisdiction. Considerations of federalism enter the picture. It may well be unfair to bar the second jurisdiction absolutely from prosecuting the defendant because it played no role in the decision to grant immunity in the first place. Such an absolute prohibition may represent a serious interference with the administration of justice in the second jurisdiction. Thus, *Murphy* merely applies an exclusionary rule which prevents the second jurisdiction from using the coerced testimony or its fruits against the individual. Such a rule is far less likely to obstruct the normal administration of justice in the second jurisdiction.

■ The purpose of the *Murphy* ruling was to broaden the scope of the privilege against self-incrimination by requiring that even jurisdictions which never granted immunity to a witness respect the interrogating jurisdiction's grant of immunity to the extent of refraining from using the testimony or its

---

1. Under prior law, the privilege against self-incrimination was weakened by the fact that a witness could be compelled to testify after a grant of immunity from a state even though that testimony subjected him to a potential federal prosecution.

fruits against the witness. *Murphy* cannot be read as narrowing the constitutional requirements of immunity in the interrogating jurisdiction.

Accordingly, the petition for rehearing is denied.

